Filed 3/23/26  In re J.S. CA2/4

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re J.S., A Person Coming Under the Juvenile Court Law. | B346004 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> J.R., <br><br> Defendant and Appellant. | Los Angeles County Super. Ct. No. 22CCJP00635 |

APPEAL from an order of the Superior Court of Los Angeles County, Gabriela H. Shapiro, Judge Pro Tempore. Affirmed.

Anne E. Fragaso, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, for Plaintiff and Respondent.

Appellant J.R. (mother) raises one argument: the case must be remanded to the juvenile court for a compliance hearing under the Indian Child Welfare Act (ICWA). In response to an inquiry by the Department of Children and Family Services (DCFS), the Cherokee Nation stated in an *email* that mother's child was not an Indian child.[1] Mother contends that the juvenile court erred by not waiting for a formal letter from that tribe before concluding ICWA did not apply. As DCFS points out, however, the Cherokee Nation eventually sent DCFS a formal letter confirming that the contents of its email were accurate. That letter is fatal to mother's sole argument. We therefore affirm the juvenile court's order terminating parental rights.

## BACKGROUND[2]

### I. Mother's first appeal

This is mother's second appeal. In her first appeal, mother likewise solely argued that remand for an ICWA compliance hearing was warranted. (*In re J.S.* (Jul. 9, 2024, B330027)

---

[1] An "Indian child" is a child who is either a member of an Indian tribe or is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe. (Welf. & Inst. Code, § 224.1, subds. (a), (b); 25 U.S.C. § 1903(4).) Apart from ICWA, future statutory references are to the Welfare and Institutions Code.

[2] The parties are familiar with the facts and procedural background that gave rise to the termination of parental rights, so we do not restate those details. We simply provide context for our resolution of the narrow ICWA issue presented. (*People v. Garcia* (2002) 97 Cal.App.4th 847, 851.)

[nonpub. opn.] (*J.S.*).)[3]  A different panel of this court affirmed the order terminating mother's parental rights, concluding that any purported ICWA deficiencies were harmless, in part because both parents clearly denied Indian ancestry.  (*J.S.*, *supra*, B330027.)

Six weeks after this court filed its opinion deciding mother's first appeal, our Supreme Court issued *In re Dezi C.* (2024) 16 Cal.5th 1112 (*Dezi C*).  *Dezi C.* states: "When there is an inadequate inquiry and the record is underdeveloped, it is impossible for reviewing courts to assess prejudice because we simply do not know what additional information will be revealed from an adequate inquiry.  We therefore hold that an inadequate Cal-ICWA inquiry requires conditional reversal of the juvenile court's order terminating parental rights with directions to the agency to conduct an adequate inquiry, supported by record documentation."  (*Dezi C.*, at p. 1125.)  *Dezi C.* "reverse[d] the judgment of the Court of Appeal with direction to conditionally reverse the order terminating parental rights and remand for further proceedings" under ICWA.  (*Dezi C.*, *supra*, 16 Cal.5th at pp. 1125, 1152.)

Shortly after deciding *Dezi C.*, our Supreme Court issued an order granting review in mother's first appeal, transferring the matter back to this court, and directing us to vacate our decision and reconsider the cause in light of *Dezi C*.  The parties then stipulated to a conditional reversal and remand to the juvenile court for compliance with ICWA inquiry requirements in light of *Dezi C*.  This court ordered the case conditionally reversed

---

[3]      In *J.S.*, father likewise argued that remand under ICWA was required, though father is not a party to this current appeal.

3

and remanded to the juvenile court for further ICWA proceedings.

## II.    Proceedings after remand

The juvenile court re-appointed counsel for the parents and held a progress hearing on December 10, 2024.  The DCFS provided a report on its updated ICWA inquiry, documenting the following: (1) in March 2022, both parents denied having any Native American ancestry; (2) in July 2022 and May 2023, the maternal step-grandfather, R.D., denied the family had Native American ancestry; he reported having no other contact information for family members and that the maternal grandmother was deceased; (3) in November 2024, mother again denied having Native American ancestry and provided contact information for a maternal great-aunt, whom mother stated was very ill and might not be responsive; the great-aunt did not return the social worker's voice message; (4) in October and November 2024, the DCFS social worker met with father at his place of incarceration; father reiterated there was no Native American heritage in the family; he reported that his parents, J.J.S. and F.S. died; he also disclosed the full names of his three siblings but stated he was not in contact with them and did not have contact information for them, nor was he aware of any other family members; (5) in November 2024, the DCFS social worker was able to contact the paternal aunt who reported the paternal side of the family indeed had Native American ancestry through the Cherokee tribe.

The paternal aunt stated that the paternal great-grandfather (F.P., deceased) was Cherokee Indian but his registration was uncertain.  The paternal great-great-

4

grandfather (name unknown) was registered with the tribe, and the paternal aunt believed that he had lived in Michigan. Neither the paternal aunt nor other family members had documentation regarding the family's Native American ancestry, and no one else in the family had further information. The only other persons aware of the family's Native American ancestry were the two paternal uncles, but they had no additional information, did not want to be involved, and were not located despite DCFS conducting due diligence searches for them.

In November 2024, the social worker provided ICWA-030 notice, including the above information provided by paternal aunt, to the Bureau of Indian Affairs, Eastern Band of Cherokee Indians, United Keetoowah Band of Cherokee Indians, and Cherokee Nation. The social worker attached J.S.'s dependency petitions and birth certificate along with the notices.

At the December 10, 2024 hearing, the court found notice to the parents was proper. The parents did not appear, but their appointed attorneys were present. The court, after finding DCFS's ICWA inquiry sufficient, continued the matter for receipt of responses from the tribes.

At the continued hearing on February 4, 2025, DCFS reported that in December 2024, the United Keetoowah Band and Eastern Band responded that J.S. was neither a member nor eligible for membership in their respective tribes.

The court again continued the matter to receive a response from the Cherokee Nation and ordered DCFS to "document as of today, its efforts by phone, fax, and email to contact the Cherokee Nation, and obtain the certified green receipts, as well as a response as to whether or not [J.S.] is eligible for enrollment. [¶] DCFS is to find a way to speak with whoever it can to explain

5

that the court is waiting to proceed to permanent plan that the delay is having a negative impact on [J.S.]"

After repeated email and facsimile contacts, the Cherokee Nation's Eligibility Supervisor, Traci Willie, responded by email: "The child (or children) is not an 'Indian child (or children)' in relation to the Cherokee Nation as defined in the Federal ICWA. Cherokee Nation will not be involved based on the information exactly as provided. Any incorrect or omitted information could invalidate this determination. An official response letter will be generated once the information has been processed. Our current response time is approximately 90 days based on when we received the inquiry." Return receipts indicated all the tribes, including the Cherokee Nation, received the ICWA-030 notice on December 9, 2024.

Meanwhile, J.S. remained with his prospective adoptive parents, who stated, "We are eager to adopt [J.S.] and this is causing him to experience stress and emotional dysregulation from the delay in permanency." J.S., who by now had been a dependent of the court for three years, asked, "When am I getting adopted? It's been a long time and I just want this to end and be adopted."

The court convened on March 11, 2025, over 90 days after the Cherokee Nation received ICWA-030 notice. J.S.'s attorney asked the court to find ICWA did not apply and reinstate the order terminating parental rights, noting DCFS's efforts, the email response from the Cherokee Nation Indian Child Welfare Eligibility Supervisor, and emphasizing that the delay in finalizing the adoption was causing the child distress.

The parents' attorneys argued the email response from the Cherokee Nation was insufficient and requested the court wait

for a formal letter. The court, noting that Traci Willie from the Cherokee Nation was someone known to DCFS and the court, that communication with tribes may be by email, and finding that DCFS made diligent inquiry efforts, concluded the ICWA did not apply and reinstated the order terminating parental rights.

On March 14, 2025, the Cherokee Nation sent DCFS a letter confirming the contents of its prior email—that J.S. is not an Indian child, and that the tribe had no legal standing to intervene in this matter.[4]

Mother timely appealed.

## DISCUSSION

Congress enacted ICWA "to promote the stability and security of Indian tribes and families by establishing minimum standards for removal of Indian children from their families and placement of such children 'in foster or adoptive homes which will reflect the unique values of Indian culture.' " (*In re Levi U.* (2000) 78 Cal.App.4th 191, 195; see also 25 U.S.C. § 1902.) "ICWA established minimum standards for state courts to follow before removing Indian children from their families and placing them in foster care or adoptive homes. [Citations.]." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1048.) "ICWA also describes a preference for placement of Indian children with their extended families, members of their tribe, or other Indian families. [Citations.]" (*In re Kenneth D.* (2024) 16 Cal.5th 1087, 1098

---

[4] We granted DCFS's request for judicial notice of the Cherokee Nation's letter.

(*Kenneth D.*).)  In 2006, California adopted various procedural and substantive provisions of ICWA.  (*In re D.S.,* at p. 1048.)

Under California law, the juvenile court and DCFS have "an affirmative and continuing duty to inquire whether a child for whom a petition under Section 300 . . . may be or has been filed, is or may be an Indian child."  (§ 224.2, subd. (a); see *In re Isaiah W.* (2016) 1 Cal.5th 1, 9, 11-12.)  "The continuing duty to inquire whether a child is or may be an Indian child 'can be divided into three phases: the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice.' " (*In re Y.W.* (2021) 70 Cal.App.5th 542, 552.)

The duty of initial inquiry includes, but is not limited to, "asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child."  (§ 224.2, subd. (b)(2).)

Mother does not complain about the adequacy of DCFS's ICWA inquiry or urge that the notice requirements of ICWA applied.  Rather, she claims that the Cherokee Nation's email response was insufficient to support a finding that the ICWA did not apply, and that the juvenile court should have waited for a formal letter from the tribe before terminating parental rights. We need not, however, decide whether the juvenile court's decision to rely on the email was error under ICWA.  This is because shortly after the juvenile court concluded ICWA did not apply and terminated parental rights, the Cherokee Nation sent DCFS a letter confirming the contents of its email—that J.S. was not an Indian child.  Because mother raises no other arguments, she has not met her burden on appeal of showing the juvenile court erred.

## DISPOSITION

We affirm the juvenile court's order terminating parental rights.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


TAMZARIAN, J.

We concur:


ZUKIN, P. J.


COLLINS, J.

9